LOWES *v.* LOWES.

DEED TO INFANT—SETTING ASIDE—FRAUD—BILL OF REVIEW.

   Parents executed and recorded a deed of a farm to their 18-year-old son, subject to a mortgage, which, by the terms of the deed, he assumed and agreed to pay. A year and a half later a decree setting aside the deed was made in a suit by next friend; the minor swearing to a petition that the deed was made without his knowledge or consent, and was without consideration; that he had no use for the farm, and no means to pay the mortgage or interest; and that his parents had an opportunity to sell the farm, and purchase with the proceeds property which would benefit the whole family. Immediately thereafter, pursuant to negotiations commenced before the suit, and in which he was an active participant, the farm was exchanged for a hotel, in which he was thereafter employed. A year later he instituted proceedings by next friend to review and set aside the decree, filing a petition and giving testimony contradicting the former petition, and alleging that he did not know its contents. He also alleged that, as consideration for the deed, besides assuming the mortgage, he agreed to support his parents. He did nothing towards performing his contract, except .that his parents had part of his wages, to which they had a legal right. *Held,* that the attempt to set aside the decree was in fraud of those who had traded the hotel, and should not be sustained.

Appeal from Oakland; Smith, J. Submitted April 3, 1901. Decided July 2, 1901.

Bill by Clarence B. Lowes, an infant, by next friend, against Miles F. Lowes, Augusta E. Lowes, Mary E. Martin, and Charles C. Pennell, to review and reverse a decree setting aside a deed. From a decree for complainant, defendant Martin appeals. Reversed.

*Davis & Bromley,* for complainant.

*Watson & Chapman* and *Perry & Perry,* for appellant.

HOOKER, J. Miles F. Lowes and Augusta E. Lowes were husband and wife, and Clarence B. Lowes was their son. In the year 1893 they resided upon a farm of 106 acres, held as tenants in entirety by Miles and Augusta Lowes, and on September 19th of that year they (Miles and Augusta) executed and caused to be recorded a deed of the same, running to the son. The son states in his testimony that this was done because his father was addicted to drink and might squander the property. There is also testimony that on one occasion the son stated that it was done through fear of obligations outstanding. It does not clearly appear what the reason was. We are not able to find from the proof that it was an illegal transaction, designed to hinder, delay, or defraud creditors; and, while the son now states in his testimony that the conveyance was accompanied by a promise upon his part to support his parents, he was then a minor, and does not appear to have done any more than use a part of his wages for that purpose for a short time, if he did that; and to these his father had a right under the law. Perhaps it is as probable that it was done through the influence of the mother, for the reason first assigned. It may have been through the influence of the son. No consideration, other than as above stated, was paid for the conveyance. It is not clear that the deed was ever delivered to the son, except by putting it on record. He was then nearly 18 years of age.

On April 27, 1895, Clarence B. Lowes filed in the Oakland circuit court, in chancery, a petition alleging that he was upwards of 19 years old, and that a suit was about to be instituted in his behalf for the purpose of setting aside a deed made by his parents to him, dated September 19, 1893, and recorded the same day. The petition described the farm as the land deeded, and stated that the deed was made without his knowledge or consent, and was without consideration; that it was owned by his father and mother, and was incumbered by a mortgage of $1,500; that they had afterwards removed from and rented the farm, and that petitioner had no use for it, and no means

to pay the mortgage, or even the interest upon it; that he knew of no good reason for making the deed; and that it was of no benefit to him or any one else. It stated further that his parents had an opportunity to sell the farm, and to purchase other property with the proceeds, where all the family could live and find employment, and that the same would be for their benefit. He made oath to this petition, and a next friend was appointed, a bill filed, and the suit pushed to a decree setting aside the deed. No appeal was taken from the decree.

Thereupon the land was conveyed to Mary E. Martin, subject to the mortgage, who in exchange therefor conveyed a hotel and other property, taking a mortgage back on the hotel for a balance her due. Clarence Lowes was an active participant in bringing about this trade, which was in process of negotiation before the suit was commenced. It was in view of this prospective trade that such action was taken; a contract having been previously made, which could not be performed without a conveyance of the farm. Clarence Lowes testified that he did not know the contents of this petition when he signed and swore to it, and it seems that a jury acquitted him on a charge of perjury growing out of it; but we think the statement of the witness Sawyer more probable, and are convinced that the petition was signed and sworn to intelligently and deliberately.

The Lowes, including Clarence, moved into the hotel, where they remained for a time, and a bar was maintained there; Clarence himself conducting it at times. A few weeks after he became of age, which was in November, 1896, he abandoned the hotel and took possession of the farm. The Lowes took away with them considerable of the personal property bought from Mrs. Martin. Soon after taking possession of the farm he asked and obtained leave to file a bill of review in his former proceeding, and upon a hearing of the case the former decree was set aside, and the parents and Mrs. Martin held to have taken the farm subject to the right of Clarence to disaffirm the

transfer. The petition for leave to file this bill of review contradicts unqualifiedly most of the allegations of his former petition, and Clarence Lowes supplemented it by testimony that he was ignorant of its contents. The learned circuit judge gave no credence to this statement.

The deed, on its face, shows that it was made subject to a mortgage of $1,500, which the grantee was to assume and pay. Clarence Lowes testified that he was to support his parents as a part of the consideration. It is manifest that this was a contract which, by reason of his infancy, it was beyond his power to make. He never attempted to perform it. Not only this; when it suited his purpose to have this land exchanged for a hotel, he did not hesitate to swear that he did not make the promise, for he said in his first petition that the deed was made without his knowledge or consent; and he did this for the purpose of taking legal proceedings which should make it possible to satisfy the Martins with the title which he and his parents proposed to give to this farm in exchange for the hotel. The only theory upon which his attempt to reopen this chancery decree can be excused is that he did not know the contents of his petition, which he undertook to make the court believe was concocted by his parents and his lawyer. If that is not true, and he made the first petition with full knowledge of its contents, we know of nothing lacking to make it a part of a fraud upon the Martins, and in such case he ought not to be relieved.

This dutiful son (whom the court finds to have been reasonably bright, with a fair education), if he is now to be believed, accepted from his parents a deed of all they had in the world, except a little personal property, upon a promise to pay a mortgage debt owed by them and to support them. He does not hesitate to give plausibility to the story by making it appear that his father was an inebriate, who needed protection against a habit so strong that it would swallow up the land held by himself and wife in entirety, although just how that could be accomplished without the death or consent of the wife is not

stated. Having obtained the title, he proceeds to negotiate a trade for a hotel where he and his father can sell the dreaded liquor; and, in order to make it possible to convey the farm, which he finds is tied up by reason of his infancy, he does not hesitate to charge his parents with attempting to impose obligations upon him that he did not want to assume, by surreptitiously making and recording a deed in which he was named grantee; and later, finding it to his advantage to repudiate his trade with the Martins, he again charges his parents with conspiring with a lawyer to deprive him of his rightful title to the farm, and intimidating him by threats into signing a petition without knowing its contents, which he now admits to contain a tissue of falsehood.

There is no doubt that when a grantor makes and causes to be recorded a deed, with intent to pass title, it may be a good delivery; but it is not unless the grantee is willing to receive it, and even an infant cannot have title and obligations forced upon him in such a way against his will. Now, that is what this late infant solemnly swore was done. He insisted on being relieved therefrom, and a court of chancery adjudicated upon the matter. It had jurisdiction, and its decree is binding until set aside. How are we to tell when this bright and educated young business man told the truth? Has he come into equity with clean hands? Is he here as ready to do equity as to ask it? What has he paid to any one for this 100-acre farm which he asks us to restore to him? The whole fabric of his case rests on no broader foundation than that during his infancy a deed was made to him without consideration, and, although he has since caused another to buy it in reliance on the truth of his statements showing that he never received the title, nevertheless he acquired title, and is now entitled to take it from her. We feel justified in treating his first petition as one justifying the relief he obtained, and in holding that this attempt to review and set aside the decree is a fraudulent effort to cheat the Martins out of their title to the lands.

The decree of the circuit court is reversed, and the bill of review dismissed, with costs of both courts.

MONTGOMERY, C. J., LONG and GRANT, JJ., concurred. MOORE, J., did not sit.